IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BUS AIR, LLC,

    *Plaintiff,*

v.

ANTHONY R. WOODS and
E3 RIVERS, LLC F/K/A BUS AIR
MANUFACTURING, LLC,

    *Defendants.*

C.A. No. 19-1435-RGA-CJB

## MEMORANDUM ORDER

Before me are Plaintiff's objections (D.I. 112) to the Magistrate Judge's Memorandum Order ("Order") (D.I. 111) denying Plaintiff's motion to compel arbitration and stay litigation relating to Defendants' counterclaims (D.I. 86). The Order also denied Defendants' motion to strike (D.I. 102), to which there were no objections. I have considered the parties' briefing. (D.I. 112, 117). For the following reasons, Plaintiff's objections (D.I. 112) are OVERRULED, and the Magistrate Judge's Order (D.I. 111) is AFFIRMED.

I.  BACKGROUND

Plaintiff purchased Defendants' bus-related air conditioning installation and service business pursuant to an Asset Purchase Agreement, or "APA," executed on September 25, 2017. (D.I. 1-1, Ex. A at ¶ 1, 9; *id.*, Ex. 1 (hereinafter, "APA") at 1)). The APA provided for a first payment of $18,190,000 at closing followed by a second Earnout payment. (APA at § 3.1). The Earnout payment was to be calculated as set out in the APA, in an amount of up to $2,000,000 (the "Earnout Amount"). (*Id.*). In the event of a dispute regarding the Earnout Amount, the APA provides as follows:

> Any disagreement between Buyer [Plaintiff] and Seller [Defendants] with respect to the calculation of the Earnout Amount shall be resolved by the Independent Accounting Firm ["IAF"] in the same manner and pursuant to the same procedures as are set forth in Section 3.2(e) for resolutions of disputes regarding Final Closing Amounts.

(*Id.*). Section 3.2(e) of the APA relates to Plaintiff's provision of certain calculations (including "Target Net Working Capital" and "Closing Net Working Capital") that are labeled "Final Closing Amounts." (APA at § 3.2(e)). Section 3.2(e) reads, in relevant part:

> If the Company [Defendants] disputes any aspect of Buyer's [Plaintiff's] Proposed Calculations, then the Company shall have the right, at the Company's expense, to review the Final Net Working Capital. The Company shall complete its review within fifteen (15) days after the date the Company disputes Buyer's Proposed Calculations. If the Company, after such review, still disagrees with Buyer's Proposed Calculations, and Buyer does not accept the Company's proposed alternative calculations[,] . . . the Company and Buyer shall work together in good faith to attempt to resolve their differences concerning the Final Net Working Capital and if the Company and Buyer are unable to resolve such differences within fifteen (15) days after delivery of the Company's Proposed Calculations to Buyer, then the Company and Buyer shall direct an independent regional accounting firm to be mutually agreed upon by both parties (the "<u>Independent Accounting Firm</u>") to resolve remaining disputed items (the "<u>Remaining Disputed Items</u>") within fifteen (15) days after the date of Buyer's rejection of the Company's Proposed Calculations by conducting its own review of the Final Net Working Capital and thereafter selecting either the Company's Proposed Calculations of the Remaining Disputed Items or Buyer's Proposed Calculations of the Remaining Disputed Items or an amount in between the two. Each of the Company and Buyer agrees that it shall be bound by the Independent Accounting Firm's determination of the Remaining Disputed Items.

(*Id.* at § 3.2(e) (emphasis in original)).

It became clear that the parties could not agree on the calculation of the Earnout Amount. (*See* D.I. 111 at 4-5). Plaintiff filed a breach of contract action in the Delaware Court of Chancery. (D.I. 1, Ex. A at 1). The case was then removed to this Court. (D.I. 1). After Plaintiff filed an amended complaint (D.I. 77), Defendants filed their Answer and Counterclaim (D.I. 78). Three of the four counts (Counts I-III) in Defendants' Counterclaim reference the parties' dispute regarding the Earnout Amount. (*See id.* at ¶¶ 42, 46, 51, 56, 60). Plaintiff moved the Court (i) to compel arbitration on Defendants' Counterclaims I-III to the extent that they relate to

the Earnout Amount dispute and (ii) to stay proceedings in this case pending arbitration. (D.I. 86). The Magistrate Judge denied both motions. (D.I. 111). Plaintiff filed objections to the Magistrate Judge's Order. (D.I. 112). The issue has been fully briefed. (D.I. 112, 117).

## II.   LEGAL STANDARD

Under 28 U.S.C. § 636(b), a Magistrate Judge may hear and determine non-dispositive pretrial motions. "A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein." *V.I. Water & Power Auth. v. GE Int'l*, 561 F. App'x 131, 134 (3d Cir. 2014); *see GNH Grp., Inc. v. Guggenheim Holdings, L.L.C.*, 2020 WL 4287358, at 2* n.1 (D. Del. July 27, 2020). Because a motion to compel arbitration is not a dispositive motion, the Magistrate Judge validly issued a "written order stating the decision" under Federal Rule of Civil Procedure 72(a).[1] The Court reviews such orders under the "clearly erroneous or contrary

---

[1] Plaintiff asserts that its motion to compel arbitration is dispositive because Plaintiff brought the motion under Rule 12(b)(1) and, in the alternative, Rule 56. Courts in the Third Circuit have heard motions to compel arbitration under Rule 12(b)(1) while noting their reservations in doing so. *Hoboken Yacht Club LLC v. Marinetek N. Am. Inc.*, 2019 WL 7207486, at *7 (D.N.J. Dec. 26, 2019) (acknowledging "doubts that Rule 12(b)(1) is the appropriate section under which to proceed"). The Third Circuit has observed that "motions seeking the dismissal of [an] . . . action on the basis that arbitration is required are not jurisdictional as they raise a defense to the merits of an action. Rather, such dismissals are generally effected under Rule 12(b)(6) . . . or Rule 56." *Liberty Mut. Fire Ins. Co. v. Yoder*, 112 F. App'x 826, 828 (3d Cir. 2004); *see also* James W. Moore & Milton I. Shadur, 2 *Moore's Federal Practice – Civil* § 12.30 (2022) ("[A] motion seeking to enforce the [arbitration] agreement does not challenge the court's subject matter jurisdiction and cannot be brought under Rule 12(b)(1)."); *see generally Olympus Am., Inc. v. Cintas Corp. No. 2*, 2021 WL 1248523, at *5-*11 (D.N.J. Apr. 2, 2021). Whatever is the appropriate procedural styling of a motion to compel arbitration, the Court relies on specific statements by the Third Circuit that the motion to compel arbitration is non-dispositive. *See V.I. Water & Power Auth.*, 561 F. App'x at 134 (holding that a motion to compel arbitration is not dispositive and that there is "no exercise of Article III power when a Magistrate Judge rules on a motion to compel arbitration").

Plaintiff also argues that the issuance of a Memorandum Order was inconsistent with the Magistrate Judge's use of the "genuine issue of material fact" summary judgment standard. (D.I. 112 at 3 n.4). But Plaintiff confuses the summary judgment motion with the standard used in a summary judgment motion. While a summary judgment motion is a dispositive motion, not every motion that uses the "genuine issue of material fact" standard is a dispositive motion. *See,*

to law" standard. Fed. R. Civ. P. 72(a). A ruling is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Evonik Degussa GmbH v. Materia Inc.*, 2011 WL 3707067, at *5 (D. Del. Aug. 24, 2011). A ruling is contrary to law "only when the magistrate judge has misinterpreted or misapplied the applicable law." *Evans v. John Crane, Inc.*, 2019 WL 5457101, at *6 (D. Del. Oct. 24, 2019) (internal quotation marks omitted). Though a motion to compel is not a dispositive motion, the Court reviews the Magistrate Judge's legal conclusions *de novo* because "the phrase 'contrary to law' indicates plenary review as to matters of law." *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). Under Delaware contract law applicable in this case, the Court "may draw its own conclusions as to the written terms of the contract" but should defer to the Magistrate Judge "on findings of fact based on evidence beyond the four corners of the document." *Am. Fam. Mortg. Corp. v. Acierno*, 1994 WL 144591, at *3 (Del. Mar. 28, 1994).

### III. DISCUSSION

To determine whether a party submitted to arbitration, a court must consider "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Century Indem. Co.*, 584 F.3d at 527. Under Delaware law, "[w]hen interpreting a contract, the role of a court is to effectuate the parties' intent." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). Courts will "not enforce a contract that unclearly or ambiguously reflects the intention to arbitrate." *Kuhn Constr. v. Diamond State Port Corp.*, 990 A.2d 393, 396 (Del. 2010); *see also DMS Props.-First, Inc. v. P.W. Scott Assocs., Inc.*, 748 A.2d 389, 391 (Del. 2000) ("A party

---

*e.g., Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 528 (3d Cir. 2009) (applying "the familiar summary judgment standard" to adjudicate a non-dispositive motion to compel arbitration).

4

cannot be forced to arbitrate the merits of a dispute . . . in the absence of a clear expression of such intent in a valid agreement."). "Ambiguity exists when the provisions in controversy are reasonably or fairly susceptible to different interpretations." *Kuhn Constr.*, 990 A.2d at 396.

Central to the dispute here is whether the parties intended the Independent Accounting Firm ("IAF") named in the APA § 3.2(e) to serve as an arbitrator or only as an expert. Drawing on the analysis of Delaware law that this Court set forth in *Sapp v. Indus. Action Servs., LLC*, 2020 WL 2813176 (D. Del. May 29, 2020), the Magistrate Judge considered several factors relevant to determining whether the IAF is to serve as an arbitrator or merely as an expert. After considering these factors, the Magistrate Judge found that because the parties intended the IAF to serve only as an expert, there was no valid arbitration agreement. (D.I. 111 at 21-22).

The APA text does not expressly state that the IAF would serve as an "arbitrator," and the language of "arbitration" and variants like "arbitral" is absent from the APA. (*Id.* at 23-24). Under Delaware law, this lack of arbitration language weighs against a finding of a clear intent to arbitrate, though not dispositively. "We do not require the magic word, 'arbitration,' to find that parties intended to arbitrate, but [a party's] failure to include the express term[,] . . . coupled with other ambiguities, . . . could lead [one] reasonably to conclude that [the party] had elected to forego arbitration of claims." *Kuhn Constr.*, 990 A.2d at 397. The significance of the lack of arbitration language is partially offset by the fact that the APA does not expressly label the IAF an "expert, not arbitrator." (D.I. 111 at 22). But even if there is a convention to use the label "expert not arbitrator" to signal mere expert determination, the convention to include "arbitration" terms to signal arbitration is plausibly stronger than the convention to include "expert not arbitrator" to signal mere expert determination. *See* NYC Bar Comm. on Int'l Com. Arbitration, *Purchase Price Adjustment Clauses and Expert Determinations: Legal Issues,*

5

*Practical Problems and Suggested Improvements* 1 n.3, 7-8 (2013) (recommending use of "act as an expert and not as an arbitrator language" to indicate non-arbitration expert determination, while observing that "many practitioners do not know . . . of the appropriate vocabulary to distinguish [expert determination] from arbitration"). Therefore, the way that the APA labels the IAF weighs against a finding of a clear intent to arbitrate. The lack of express "arbitrator" and "expert" language means that if there is a clear intent to arbitrate, it would have to be found in other indications of the IAF's role elsewhere in the agreement.

In a typical expert determination, "the authority granted to the expert is limited to deciding a specific factual dispute concerning a matter within the special expertise of the decision maker, usually concerning an issue of valuation." *Id.* at 4; *accord Ray Beyond Corp. v. Trimaran Fund Mgmt.*, 2019 WL 366614, at *6 (Del. Ch. Jan. 29, 2019). The Magistrate Judge found that the IAF's authority "is of a fairly cabined scope" related to "particular factual disputes that are within the special expertise" of the IAF. (D.I. 111 at 24). In reaching this conclusion, the Magistrate Judge relied on the APA's provision that "[a]ny disagreements between [Plaintiff] and [Defendants] with respect to the calculation of the Earnout Amount shall be resolved by the [IAF][.]" (APA at § 3.1). Under the Magistrate Judge's construction of this provision, the APA requires the IAF to resolve factual disagreements calling for expert determination regarding a calculation, as opposed to disagreements calling for resolution by legal professionals. (D.I. 111 at 24-25). Plaintiff objects, arguing that the IAF was not granted such a narrow role because the APA does not restrict the phrase "any disagreements" with the word "factual." (D.I. 112 at 8).

The Court agrees with the Magistrate Judge's finding that the IAF's role in dispute resolution is limited in scope.

The phrase "any disagreements . . . with respect to the calculation of the Earnout Amount" could be read either (a) "to encompass only accounting practices and procedures affecting earn-out calculations" or (b) "to cover related matters" that might impact earn-out calculations, such as allegations of "operational misconduct and unreasonable business practices to alter the revenue calculations and defeat a higher earn-out payment." *USG Cos. v. Advantage Sales & Mktg. LLC*, 2018 WL 3117545, at *8 (D. Del. June 25, 2018). Other aspects of the APA support the interpretation of this phrase limiting the IAF's role to resolving accounting disputes. The APA states that the IAF's role is to resolve the "Remaining Disputed Items" that persist after both parties attempt to reach agreement on the Earnout Amount. (APA at § 3.2(e)). The APA specifically refers to "Calculations of" the Remaining Disputed Items. (*Id.*). The fact that these Remaining Disputed Items are resolved by means of calculation suggests that IAF's role was specifically to resolve factual disputes regarding accounting practices and procedures, not legal disputes or non-accounting disputes.

The Magistrate Judge found that the lack of reference to procedural rules "suggests that the agreement was simply allowing for an expert determination," not for arbitration. (D.I. 111 at 25). Plaintiff objects that "the absence of any procedural rules or guidance in an agreement does not at all signify that the proceeding is not a valid arbitration" because arbitration is a "more informal dispute resolution process." (D.I. 112 at 9). Plaintiff's objection is contrary to Delaware law. Delaware courts recognize that lack of procedural language suggests that the parties did not clearly intend to arbitrate. *See Ray Beyond*, 2019 WL 366614, at 7* ("Arbitration provisions typically include procedural rules affording each party the opportunity to present its case; indeed, this is viewed as a defining characteristic of arbitration provisions." (internal citation and

7

quotation marks omitted)). Even though the absence of procedural rules is not dispositive, it nevertheless weighs against a finding of a clear intent to arbitrate.

The other language in the agreement fails to indicate a clear intent to arbitrate. The APA states, "Each of the [E3 Rivers] and [Plaintiff] agrees that it shall be bound by the [IAF]'s determination[.]" (APA at ¶ 3.2(e)). The Magistrate Judge found that, under Delaware law, language indicating parties will be "bound" is "arbitration-style language," supporting Plaintiff's position that the IAF's role would be that of an arbitrator. (D.I. 111 at 23). In response, Defendants claim that language of being "bound" by a decision does not itself support a finding that the parties intended to arbitrate. (D.I. 117 at 6-7). The Court agrees with Defendants that bare use of "binding" language is not indicative of arbitration. In *Viacom International, Inc. v. Winshall*, the court held that language pertaining to "fraud" and "manifest error," not language pertaining to "binding" decisions or being "bound," was arbitration-like because it matched the language of the Federal Arbitration Act. 2012 WL 3249620, at *3 (Del. Ch. Aug. 9, 2012). Statements that parties would be unable to appeal a "final determination" of the expert "in the absence of fraud or manifest error" have subsequently been held to be "arbitration-style" language. *Penton Bus. Media Holdings, LLC v. Informa PLC*, 252 A.3d 445, 460 (Del. Ch. 2018). These cases are primarily focused on the finality of the decision, not its bindingness. *See Viacom*, 2012 WL 3249620, at *3. Even though the phrase "final and binding" is indicative of arbitration, *see Sapp*, 2020 WL 2813176, at *3, the word "binding" or "bound" alone is not necessarily indicative of arbitration. *See* NYC Bar Comm. on Int'l Com. Arbitration, *supra* at 2, 4 (both expert determination and arbitration can "lead[] to a binding result"). For these reasons, the APA's statement that the parties "shall be bound" by the IAF's determination does not support a finding of a clear intent to arbitrate.

Plaintiff objects that the Magistrate Judge erred in failing to adequately consider this Court's decision in *Sapp*. (D.I. 112 at 6 n.11). Plaintiff asserts that *Sapp* is factually "effectively identical" to the present case with respect to the IAF's duties. (D.I. 112 at 6 n.11). But the scope of the duties of the IAF in *Sapp* turned on idiosyncratic features of the agreement in dispute there. *See Sapp*, 2020 WL 2813176, at *3 (finding broader duties for the IAF in dispute resolution in part because the phrase "notice of disagreement" was not capitalized in the key provision). Unlike the APA here, the agreement in *Sapp* also references a "final and binding" decision indicative of arbitration. *Id.* at *3. These differences are consequential because whether there was a valid agreement to arbitrate in *Sapp* was concededly a "close call." *Id.* Moreover, in a subsequent Delaware case, *Stone v. Nationstar Mortgage LLC*, an IAF was to review "Disputed Items" regarding "any item set forth" in a statement presenting the calculation of a "Final Closing Payment." 2020 WL 4037337, at *2 (Del. Ch. July 6, 2020). The IAF was to issue a "final written determination" as to the value of those items that would "be binding on the Sellers' Representative, each Seller and Buyer, as if a final, non-appealable arbitral decision or award." *Id.* The *Stone* court found it "safe to conclude" that the IAF was "intended to serve as an expert, not an arbitrator." 2020 WL 4037337, at *8. Here, the APA describes the IAF's duties with similar "binding" language regarding resolution of "any item" pertaining to an accounting value. Factually parallel Delaware caselaw thus supports rejecting Plaintiff's contention.

For these reasons, the Magistrate Judge's finding that there was no clear intent by the parties to arbitrate the Earnout Amount dispute was not clearly erroneous or contrary to law.

## IV.   CONCLUSION

For the above reasons, Plaintiff's objections (D.I. 112) are OVERRULED. The Magistrate's Order (D.I. 111) is AFFIRMED.

9

IT IS SO ORDERED this 11 day of July 2022.

                                                 /s/ Richard G. Andrews
                                                 United States District Judge